Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL RUCHMAN, *individually and on behalf of all those similarly situated*, *Plaintiff*, | No. ____________ |
| *v.* | **CLASS ACTION COMPLAINT** |
| DAS LABS LLC dba BUCKED UP, *a Utah limited liability company*, *Defendant*. | JURY TRIAL DEMANDED |

Daniel Ruchman ("Plaintiff"), individually and on behalf of all others similarly situated in the state of California, by and through undersigned counsel, hereby brings this action against DAS Labs LLC dba Bucked Up ("Bucked Up" or "Defendant"), alleging that its Bucked Up Lightly Carbonated Protein Drinks, which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised because the Products contain fewer grams of protein than is claimed on the Products' labels, and upon information and belief and investigation of counsel alleges as follows:

**PARTIES**

1. Daniel James Ruchman is and at all times relevant was a citizen of the state of California domiciled in Ventura, California.

2. Defendant DAS Labs LLC dba Bucked Up is a Utah limited liability company with its principal place of business in American Fork, Utah. On information and belief all decisions regarding formulation, labeling, and advertising of the Products are made at this principal place of business.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4. Plaintiff seeks to represent Class members who are citizens of states and countries different from the Defendant.

5. The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6. In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7. In the alternative, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9. Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the

Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

10. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

11. Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12. Plaintiff's losses and those of other Class members were sustained in this district.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

14. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS

15. Millions of Americans consume specific amounts of protein in order to lose or maintain weight, build muscle, and meet fitness goals.[1] The past several decades have seen not only the rise of protein-centered diets such as the Atkins, paleo, or keto diets—which require adherents to carefully track "macros," including protein—but also increased evidence that a protein-heavy diet can be critical to supporting muscle growth, making weight training more efficient, and helping with weight loss and maintenance. In fact, "several clinical trials" have found that a high-protein diet "not only reduces body weight (BW), but also enhances body

[1] Heather J. Leidy, "Increased Dietary Protein as a Dietary Strategy to Prevent and/or Treat Obesity," MO. MED. (Jan./Feb. 2014), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC6179508/.

composition by decreasing fat mass while preserving fat-free mass (FFM)," more than "both low-calorie and standard-calorie diets."[2]

16. Central to the tracking of protein consumption is accurate nutritional labeling of foods and dietary supplements. As noted by U.S. Food and Drug Administration ("FDA") Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet." Indeed, FDA recommends relying on Nutrition Facts Labels as primary "tool for monitoring consumption of protein."[3]

17. Plaintiff Daniel Ruchman is among those millions of Americans. He consumes protein supplements to ensure he gets enough protein in his diet, in order to maintain his weight and meet fitness goals. As such, ensuring that he is able to accurately track his protein intake is important to Mr. Ruchman.

18. As part of this effort and to assist in meeting his protein consumption goals, Plaintiff purchased the rainbow candy flavor of the Products on or about January 8, 2026 from a Vitamin Shoppe store in Thousand Oaks, California.

19. The Products are ultra-filtered whey isolate protein drinks, manufactured in rainbow candy, banana pineapple, peach mango, orange cream, and berry blast flavors. The Products are advertised as a protein supplement good for consumption after a workout.

20. The Products all state on the front label that they contain 25 grams of protein per drink and repeat the same claim regarding protein content in the Nutrition Facts panel on the back label:

---

[2] Jaecheol Moon & Gwanpyo Koh, "Clinical Evidence and Mechanisms of High-Protein Diet-Induced Weight Loss," 29 J. OBESITY & METABOLIC SCI. 166-73 (2020), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC7539343/.

[3] FDA, "Interactive Nutrition Fact Label – Protein," *available at* https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/assets/InteractiveNFL_Protein_October2021.pdf.







**A. The Products Do Not Contain the Amount of Protein Stated.**

21. At the undersigned's direction, the Products were tested in or around December 16, 2025 by EMSL Analytical, an independent third-party laboratory in Cinnaminson, New Jersey. This testing employed AOAC Method 992.15 to determine the actual protein content of the Products. It revealed that the protein content in the Products is overstated, with the shortfalls ranging from 6 to 18 percent across all flavors tested:[4]

[4] In calculating actual grams of protein per serving, a density factor was applied reflecting density testing performed by Plaintiff. The factor is approximately 1.019 for all flavors.

| FLAVOR | SERVING (mL) | TESTED PROTEIN g/100g | STATED PROTEIN SERVING | ACTUAL PROTEIN SERVING | ACTUAL TO STATED |
|---|---|---|---|---|---|
| Bucked Up – Peach Mango | 473 | 4.45 | 25 g | 21.45 g | 86% |
| Bucked Up – Rainbow Candy | 473 | 4.25 | 25 g | 20.48 g | 82% |
| Bucked Up – Banana Pineapple | 473 | 4.49 | 25 g | 21.64 g | 87% |
| Bucked Up – Orange Cream | 473 | 4.67 | 25 g | 22.51 g | 90% |
| Bucked Up – Berry Blast | 473 | 4.67 | 25 g | 22.51g | 90% |

22. The Products are manufactured, formulated ready-to-drink beverages containing isolated protein ingredients, flavoring ingredients, acids, preservatives, sweeteners, stabilizers, and other added ingredients combined through industrial processing to create a finished beverage product.

23. The Products are not raw agricultural commodities or foods sold in their naturally occurring form. The primary protein ingredient in the Products is whey protein isolate, an ingredient produced through industrial separation and filtration processes that isolate protein fractions from milk and create a highly concentrated protein ingredient that differs substantially from milk in its naturally occurring form. Because the Products are formulated, manufactured foods containing isolated protein ingredients and multiple added ingredients, they are properly classified as "Class I" foods within the meaning of 21 C.F.R. § 101.9(g)(3). Accordingly, federal labeling regulations require that the Products be formulated such that the actual protein content is at least equal to the amount declared on the label.

**B. Plaintiff Reasonably Relied on Defendant's Labeling Statements.**

24. Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels.

25. Consumers including Plaintiff especially rely on label claims made by food product manufacturers such as Defendant, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products.

26. Further, federal law and corresponding state law and regulations both reflect and create reasonable consumer expectations concerning the contents of foods and beverages. That is, consumers have been conditioned to rely on the accuracy of the claims concerning the amount of protein in a food product, and plan their consumption around those claims.

27. Plaintiff reviewed the front label and Nutrition Facts panel on the Products prior to his purchase, and reviewed the statements regarding protein being made there. Consumers such as Plaintiff who viewed the Products' labels reasonably understood the Products to contain 25 grams of protein per drink. These representations were false.

28. Consumers including Plaintiff reasonably relied on these label statements such that they would not have purchased the Products from Defendant if the truth about the Products was known, or would have only been willing to pay a substantially reduced price for the Products had they known that Defendant's representations were false and misleading.

29. In the alternative, because of its deceptive and false labeling statements, Defendant was enabled to charge a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

30. Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injuries.

31. All flavors of the Products make the same protein claims described herein, use nearly identical packaging containing nearly identical graphical elements, and sell for the same

price per unit. Plaintiff is therefore an adequate representative of the Class despite not having purchased all flavors of the Products.

**C. Plaintiff Lacks an Adequate Remedy at Law.**

32. A legal remedy is not adequate if it is not as certain as an equitable remedy. To obtain a full refund as damages, Plaintiff must show that the Products he received have essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that he would not otherwise have purchased, but for Defendant's misrepresentations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

33. Also, winning damages under the CLRA requires additional showings not required under equitable causes of action, including that Plaintiff has given adequate pre-suit notice under the CLRA. For example, the CLRA prohibits only particular categories of deceptive conduct. By contrast, equitable causes of action such as unjust enrichment, the UCL, and the FAL broadly prohibit "unfair" conduct.

34. By the same token, Plaintiff's common law claims require additional showings, compared to his equitable claims. For example, to prevail on his breach of warranty claim, Plaintiff needs to show that the statements he challenges constitute a warranty and that the warranty was part of the basis of the bargain. No such showings are required under the UCL and FAL. And unjust enrichment exists in part because contractual claims are often more difficult to establish. In this way, Plaintiff's UCL, FAL, and unjust enrichment claims are more certain than his legal claims.

35. Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in the state of California who purchased the Products within four years prior to the filing of this Complaint.

37. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

38. Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

39. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

40. **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the state of California.

41. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

b. Whether a reasonable consumer would understand Defendant's protein label claim to indicate that the Products contain 25 grams of protein, and reasonably relied upon that representation;

c. Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

d. Whether Defendant breached an express warranty;

e. The proper amount of damages;

f. The proper scope of injunctive relief; and

g. The proper amount of attorneys' fees.

42. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

43. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

44. **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

45. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

46. There are no defenses available to Defendant that are unique to the named Plaintiff.

47. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

48. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

49. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

a. The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b. The class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single court;

c. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

50. Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

51. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled,

harmed, and denied their rights under the law. Plaintiff faces an imminent threat of harm because he will not be able to rely on the Products' labels in the future, and will not be able to buy the Products, even if Defendant claims to have amended its labels and other statements to remove the deceptive statements described herein. To buy the Products again, Plaintiff needs the Court to enter an order forbidding Defendant from selling its Products unless it has fixed its labels to make them accurate. With that Court order in hand, Plaintiff could and would buy the Products again.

52. Furthermore, Plaintiff has not merely alleged an "informational" injury, but has also alleged that Defendant has been enabled to charge a price premium for the Products. Plaintiff has therefore alleged that compliance with federal and state regulations regarding the accurate reporting of protein content and quality in the Products would cause a decrease in the price of the Products at which Plaintiff and members of the Class would be willing to buy the Products. As a result, Plaintiff has alleged more than simply an interest in Defendant telling the truth on its labels, but an economic injury that further supports prospective injunctive relief.

53. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

54. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

**COUNT 1**
**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750 *et seq*.**

55. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

56. Plaintiff is a "consumer" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

57. The sale of Defendant's Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

58. The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

59. As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the protein content claims that were made by Defendant on its Products.

60. Defendant's ongoing failure to provide material facts about its Products on its labels violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

c. Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

d. Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labeling; and

e. Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

61. By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief.

62. Plaintiff notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by its legal obligations and to give notice to all affected customers of its intent to do so, at least 30 days prior to the filing of this Complaint.

63. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

## COUNT 2
## UNJUST ENRICHMENT

64. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative in the event that Plaintiff has an inadequate remedy at law.

65. Under California law, a claim for unjust enrichment "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc.* (9th Cir. 2015) 783 F.3d 753, 762 (quoting 55 *Cal. Jur*. 3d *Restitution* § 2). Thus, when a plaintiff alleges unjust enrichment, the Court should "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 225. Courts in California have allowed unjust enrichment and CLRA claims to proceed in the alternative. *See Scheibe v. Livwell Prods., LLC,* No. 23-cv-216, 2023 WL 4414580, at *8 (S.D. Cal. 2023).

66. Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers by misrepresenting that the Products provided 25 grams of protein per drink.

67. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

68. Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

69. Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

70. Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

71. Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed

appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

72. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

**COUNT 3**
**BREACH OF EXPRESS WARRANTY**

73. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

74. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products contained 25 grams of protein per drink.

75. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, which creates an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

76. The Products do not conform to the express warranty that the Products contain 25 grams of protein per drink.

77. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' protein content claim; (b) they paid a price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

**COUNT 4**
**VIOLATION OF THE UNFAIR COMPETITION LAW,**
**BUS. & PROF. CODE § 17200 *et seq.* — "UNFAIR" CONDUCT**

78. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

79. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein.

80. Defendant's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

81. Defendant's business practices, as alleged herein, are "unfair" because it fails to make required disclosures that would inform consumers regarding the content of the protein in its Products.

82. As a result of this "unfair" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

83. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

84. Defendant publicly disseminated untrue or misleading representations regarding the protein quality of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

85. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unfair" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seek all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 5**
**VIOLATION OF THE UNFAIR COMPETITION LAW,**
**BUS. & PROF. CODE § 17200 *et seq.* — "FRAUDULENT" CONDUCT**

86. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

87. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

88. Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq*.

89. Defendant's business practices, as alleged herein, are "fraudulent" because it fails to make required disclosures that would inform consumers regarding the content of the protein in its Products.

90. As a result of this "fraudulent" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

91. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

92. Defendant publicly disseminated untrue or misleading representations regarding the protein content of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

93. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 6**
**VIOLATION OF THE UNFAIR COMPETITION LAW,**
**BUS. & PROF. CODE § 17200 *et seq*. — "UNLAWFUL" CONDUCT**

94. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

95. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

96. Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

97. Defendant's business practices, as alleged herein, are "unlawful" because it fails to make required disclosures that would inform consumers regarding the content of the protein in its Products.

98. As a result of this "unlawful" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

99. Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

100. Defendant publicly disseminated untrue or misleading representations regarding the protein quality of its Products which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

101. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unlawful" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 7**
**VIOLATION OF THE FALSE ADVERTISING LAW,**
**BUS. & PROF. CODE § 17500 *et seq*.**

102. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

103. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

104. Defendant engaged in advertising and marketing to the public and offered for sale the Products on a nationwide basis, including in California.

105. Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to consumers.

106. Defendant's advertisements and marketing representations regarding the characteristics of the Products were false, misleading, and deceptive as set forth above.

107. At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500, *et seq*.

108. Plaintiff seeks injunctive relief and all other relief allowable under Business and Professions Code Section 17500, *et seq*.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a. Certifying the Class;

b. Declaring that Defendant violated the CLRA, UCL, FAL, was unjustly enriched, and/or breached an express warranty;

c. Awarding actual, general, or compensatory damages in an amount to be proven at trial;

d. Awarding restitution or disgorgement in an amount to be proven at trial, as permitted by law;

e. Ordering an award of injunctive relief as permitted by law, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

f. Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff;

g. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

h. Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

June 1, 2026